NEEDLES et al. v. SMITH et al.

(Circuit Court of Appeals, Fifth Circuit.   April 26, 1898.)

No. 667.

1. ATTORNEY'S LIEN—SECURITIES PLEDGED TO SECURE LOAN—PRIORITY.

Attorneys employed by a railroad reorganization committee to advise and assist them in the conduct of the business intrusted to them have a lien for their services on the securities deposited with the committee by the parties to the reorganization agreement, superior to the claim of one to whom such securities are afterwards pledged to secure a loan.

2. SAME—REORGANIZATION SCHEME—PURCHASE OF BONDS AND CONTRACT TO PAY VENDOR'S ATTORNEYS.

A railroad reorganization committee obtained a large block of bonds, and, as part of the consideration therefor, agreed to pay the owner's attorneys for their services in opposing the plan of reorganization. These bonds and the other securities deposited with the committee were then deposited as collateral security for a loan previously negotiated with a party to the reorganization agreement. The reorganization scheme failed, and the amount of the distribution to such bonds and securities was not sufficient to pay the claims of the attorneys and the pledgee. *Held*, that the claim of the attorneys was prior to that of the pledgee.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

H. B. Tompkins, for appellants.

Alex. C. King, Jack J. Spalding, John T. Glenn, Hoke Smith, John M. Slaton, and Benj. Z. Phillips, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

McCORMICK, Circuit Judge.   Pending proceedings for the foreclosure of the mortgages on the property of the Marietta & North Georgia Railway Company, certain holders of the bonds of that company and of the constituent companies out of which it was formed entered into an agreement by which they constituted certain persons a reorganization committee, with ample powers specified in the agreement, and deposited in their hands the securities held by the parties to the reorganization agreement.   Among the powers of the reorganization committee was that to employ counsel.   The committee employed Hoke Smith and John T. Glenn to represent them as counsel.   After this employment of counsel, the committee negotiated a loan with the Penn Mutual Life Insurance Company, of Philadelphia, to secure which loan they pledged the securities which had been deposited with them by the parties to the reorganization agreement.   Subsequently to the negotiation of this loan, the Penn Mutual Life Insurance Company, of Philadelphia, became a party with the reorganization committee and others to another agreement looking to a reorganization of the railroad properties involved in the foreclosure proceedings.   This last agreement purported to be made by named parties of the first, second, third, fourth, and fifth parts.   Newman Erb was one of the parties of the second part.   He was also one of the parties of the fifth part, and in the fifth part was associated with John W. Hamer.   As one of the parties of the second

part, Newman Erb duly executed the agreement; John W. Hamer, one of the parties of the fifth part, did not execute it at all; and Newman Erb did not sign it as one of the parties of the fifth part. These parties of the fifth part were to have been the purchasing trustees at the judicial sale of the railroad property, for which purchase the agreement provided, and for the subsequent disposition of the property thus to be acquired. In this agreement it was specified that:

"The party of the third part hereto [the Penn Mutual Life Insurance Company, of Philadelphia] shall immediately upon the conveyance to the new company being made, and simultaneously with said conveyance, receive new first mortgage bonds issued under the plan of reorganization, to the amount of $600,000, together with such junior securities as may attach to the said first mortgage bonds under the underwriting agreement before referred to; said bonds to be held as collateral security for its loan [$200,000]. And the parties of the first part hereto [the reorganization committee], acting on behalf of the new company, covenant and agree to deliver the said bonds to the said insurance company, party of the third part, for the purpose aforesaid."

Pursuant to the original reorganization agreement, and apparently pursuant to the agreement last above named (to which the Penn Mutual Life Insurance Company was party of the third part), and about six months after the day on which the latter bears date, the reorganization committee concluded an agreement with G. E. Kissel, the holder of a large block of bonds which had not been deposited with the reorganization committee, and which he had made the basis of his opposition to the plan of reorganization adopted by the committee, by which agreement the committee obtained the Kissel bonds for a consideration, a part of which was that they should pay Kissel's attorneys, Patrick Calhoun, Alexander C. King, and Jack J. Spalding, who had represented him in his opposition to the plans of the committee; the agreement providing that the amount of this fee should be fixed by William T. Newman, one of the judges of the court in which the foreclosure proceedings were being conducted, and who subsequently fixed the same at the sum of $5,000. The railroad properties were sold, but were not purchased by or on behalf of the reorganization committee. As a result of this sale, the securities deposited with the reorganization committee became entitled to certain distribution, the amount of which is not sufficient to satisfy the claims of the Penn Mutual Life Insurance Company, of Philadelphia, and the claims of the appellees Hoke Smith, John T. Glenn, Patrick Calhoun, Alexander C. King, and Jack J. Spalding.

The circuit court (Hon. William T. Newman presiding) passed its decree adjudging that the attorneys' claims on the fund were prior in right to the claim of the appellants, and, a few days thereafter, passed another decree directing that their claims be paid out of the fund in the court. The assignments of error, in four several forms, suggest that the court erred in passing these decrees. It seems to us, after a careful examination and consideration of the matter, that there cannot be any serious question as to the priority of the claim of the attorneys Hoke Smith and John T. Glenn. The reorganization agreement contemplated, as of course it must have contemplated, not only the propriety, but the necessity, of employing counsel

to advise and assist the committee in the conduct of the negotiations and business which their trust imposed. The adequate compensation of such counsel is not only a proper charge against the estate committed to their trust, but such estate in their hands was charged with a lien in favor of the counsel thus employed, to the extent of adequate remuneration for their service. The extent and value of their service is not disputed. It is conceded to amount to the sum which they claim, namely, $8,800. The claim of the other attorneys does not rest on a rule so well settled, or at least so clear in its application, and is somewhat complicated by the fact that the agreement above referred to, which purported to be made by parties of five different parts, was not signed by the parties of the fifth part as such, and was never fully acted on, and which the appellants claim cannot be considered as binding upon them, or in any way affecting the claim they are asking to have enforced here. Taking into consideration the fact that this agreement was executed by the Penn Mutual Life Insurance Company, of Philadelphia, and by all of the parties except the parties of the fifth part, who were to have been the purchasing trustees; that negotiations proceeded for some time, and transactions were had, consistent with its terms by the other parties thereto; and that, subsequent to its execution by the parties who did execute it, the agreement was made with Kissel by which the fee of his attorneys was allowed as a charge on the property of the railroad company, and was to be paid by the committee as a part of the expenses of reorganization, and to be fixed by the judge of the court before whom the foreclosure proceedings were being conducted, and were to be concluded; and it being conceded that the bonds surrendered by Kissel were delivered to Needles, trustee, who now holds the same,—it seems to us, as it did to the judge of the circuit court, that these acts should bind and conclude the appellants, and give to this charge, as a part of the expenses of reorganization, equal rank with the fee of the counsel employed by the committee. Without undertaking to distinguish the numerous authorities cited by the learned counsel for the appellants, or making special application of any of the authorities relied upon by the counsel for the appellees, we express our concurrence in the views of the learned judge of the circuit court who passed the decrees appealed from. Therefore those decrees are affirmed.